## STANFORD *et al.* v. GREENE COUNTY.

1. **Contract construed.** The plaintiffs bound themselves to select and plat the swamp lands of a certain county, for which it was agreed, on the part of the county, that they should be paid as follows: "Five per cent of the proceeds of said swamp lands, viz., five per cent on what said lands have sold for, and what said lands do sell for, as follows: one hundred dollars in cash as soon as said work is completed, and the remainder *out of the first moneys and government scrip there is realized by said county for said lands:*" *Held,* That an executory contract for the sale of the lands did not render the county liable under the contract, in such sense that an action could be maintained for the compensation stipulated.

*Appeal from Dallas District Court.*

TUESDAY, APRIL 4.

PLAINTIFFS claim of defendant four thousand dollars, upon a contract for selecting and platting the swamp and overflowed lands granted to said county.

By this contract, it was provided that plaintiffs (or one of them, who afterwards assigned one-half of the demand to his co-plaintiff,) should select and plat said lands, and be paid therefor as follows: "Five per cent of the proceeds of said swamp lands, viz., five per cent on what said lands have sold for, and what said lands do sell for, as follows: one hundred dollars in cash, as soon as said work is completed, and the remainder *out of the first moneys and government scrip there is realized by said county for said lands.*"

The petition alleges the performance of said contract by plaintiffs, and that the county has sold and disposed of said lands so selected; and realized therefrom large sums of money, and particularly has sold and contracted them to the "American Emigrant Company," and conveyed the same to said company by deed, duly acknowledged, in consideration of certain public buildings and bridges to be built and erected by said company. The account annexed claims for five per cent on 40,168 $\frac{81}{100}$ acres, at $1.25 per

acre, sold and conveyed to said "American Emigrant Company," amounting, with interest, to $3,510.

The second count of the answer admits the contract with plaintiffs, but denies that the county has received either money or scrip; avers that a contract for the sale of said lands was made with the emigrant company, which was executory only in its terms; that said contract provided that said company would make certain improvements, which they have not yet made, but at the time of the commencement of this suit had commenced work thereon; that none of said improvements have been accepted, and nothing received on said contract; that a deed was signed and deposited as an escrow with the clerk of said county for said lands, to said company, which has never been delivered or further executed; that a claim for said lands had been made by the authority of the State upon the general government, which was rejected, and neither land nor scrip received by the county or company. To this count the plaintiffs demurred:

1st. Because it admits the sale of the swamp lands, so selected by plaintiffs, to the emigrant company, and shows that it is out of the power of defendant to receive any money or scrip therefor from which to pay plaintiffs.

2d. Said count shows that said company purchased said lands; agreed to take the same at their own risk, and to pay off said plaintiffs' claim.

Demurrer overruled; and from this order plaintiffs appeal.

*Polk & Phillips* for the appellants.

*S. V. White* for the appellee.

WRIGHT, Ch. J. — Taking the averments of the second count of the answer to be true, it seems to us that this

1. CON-          action is at least premature, and that the demurrer
TRACT
construed. was correctly overruled. Appellants assert and
seek to maintain two propositions: *First.* That defendant
accepted the land selected by plaintiffs and sold the same,
and is therefore liable, whether the selections were approved
by the general government or not. *Second.* The county,
having sold its interest in said lands for improvements to
be made, has placed it out of its power to receive either
money or scrip therefor, and is, therefore, liable for the
whole amount to be paid to plaintiffs under their contract.

We might admit the correctness of the conclusions
deduced from the premises as stated, and still affirm this
judgment. But the radical difficulty in the argument is,
that the premises are unsustained by the facts as developed
by the answer. The answer does not admit the sale of the
lands. On the contrary, it shows a contract executory in
its character, by which the county undertook to convey
the land upon the performance of certain work by the com-
pany, which has not been performed, but which is in
process of performance. True, it shows that a deed has
been made, which was never delivered, but deposited as an
escrow with the county clerk.

Now, the condition of plaintiffs' contract was, that they
were to be paid (aside from the $100 which they received,
and as to which there is no controversy) out of the first
money and government scrip *realized by said county for said
lands.*

Admit that these lands could not be sold on credit, it by
no means follows that a contract could not be made for
their sale and transfer, in consideration of the erection of
public buildings, the construction of bridges, for work per-
formed for their reclamation or improvement, the making
of roads or highways, the erection of buildings for educa-
tional purposes, or making railroads through the country,
or any other purpose contemplated by the law. See Rev.,

§§ 924, 936, 941, 957, 986, 987. Indeed, the last section expressly recognizes the right of the proper county officer to make such contracts, for the purpose of aiding or carrying out any of the objects mentioned in the preceding sections, to wit, the erection of public buildings, the building of bridges, &c. Suppose, then, this county made such contract with the Emigrant Company, can it be said with justice or truth that it realized anything, either money or government scrip, so soon as such contract was made; before it was executed by the company; before the work was done, and before any benefits resulted to the county from the contract? It seems to us most unquestionably not, and that all that was said in argument about the want of power in the county to sell these lands on credit, and that, therefore, defendant was liable under the facts disclosed in the case, is entitled to but little weight. It is not a sale on credit. It is no more than a legitimate contract (how wise and advantageous for the county we do not know, and have no right now to examine), clearly authorized by the law, by which the county agrees to appropriate these lands (with the approval of the people, as indicated by an election which, it seems, was duly held) to certain purposes, to be conveyed when the consideration should be realized. But, suppose the bridges are not built, or the public buildings not erected, can plaintiffs claim that the county, by *making the contract*, so far *realized* on these lands as to entitle them to five per cent upon the estimated price to be paid for such bridges and buildings? It is not as if the work was done, the contract executed; for then the liability would attach to the same extent as if the county had received the same amount in money or scrip. And yet, here it is proper to remark, that plaintiffs could not recover, when part of the work was performed, five per cent on the whole amount of the contract, any more than they could five per cent on the whole value of the lands,

when part of them were sold for money. For, until the whole amount is realized, it cannot be known to what sum they would be entitled. The contract only provides that, from the sum realized, they are *first* to be paid five per cent thereon. And it may well be doubted, in case of a contract like that made with the Emigrant Company, whether they would be entitled to anything, until at least the bridges and public buildings were finished and accepted by the county. The fair construction would seem to be, that said contract should be treated as entire, as to each piece of work at least, and that the county is not to be regarded as having realized anything until its full completion. But, however this may be, we are clear that plaintiffs could not recover, *on the making* of such contract, five per cent on the estimated value of said lands.

It will be remembered that the answer alleges that these lands have not been conveyed, and that neither money, scrip, nor anything else has been realized therefor. Than these averments none could be more pertinent, to show a want of liability on the part of the county. They negative, in express terms, the very matter upon which plaintiffs must rely for a recovery. That a deed was made and deposited as an escrow, cannot aid plaintiffs, any more than if there had been a sale for cash, and the deed left with the clerk to be delivered when the money should be paid. If the county, by deed, parted with its *interest* in these lands and realized the consideration, it is possible it might be estopped from insisting that they were swamp or overflowed lands, within the meaning of the act of Congress and the legislation of the State. And especially so if the grantee assumed all risk as to the title, and undertook to prosecute the claim or right of the county or State, in order to perfect or secure the interest so purchased. And being thus estopped, the right of the plaintiffs to recover might be admitted, without inquiring into the true character

of the lands, without discussing whether the county could avoid liability upon the ground of the unfaithful performance of their agreement by plaintiffs, and without at all conceding a right of action as the case now stands. And it is only to this extent, that the doctrine of estoppel can possibly figure in this case. For when it is remembered that the answer denied the execution of such deed, and only shows an executory contract from which the county may or may not realize something, and upon which, when realized, and not before, plaintiffs will be entitled to receive five per cent, the case is stripped of all doubt; and it seems to us the controversy is at an end.

It only remains to say that we have examined the authorities cited by plaintiffs, and find none of them in conflict with the views above expressed. The proposition that the county, by selling and conveying the lands, would waive any question as to the acceptance of the work performed by plaintiffs, we have already seen, figures but little, if any, in the case. This may be conceded without affecting the result. So, again, it might be conceded that, if the county had parted with the title (and thus placed it out of its power, because of the failure of the company to perform its contract, or otherwise to realize money or scrip), plaintiffs would be entitled to one-twentieth of the estimated value of the land, and yet we would not reach the case now before us. And as to the authorities cited, so far as they discuss any question fairly involved in this case, incidentally or otherwise related to these propositions, we need not refer to and examine them in detail.

Affirmed.