No. 9548.

HEAGY ET AL. *v.* STEINMARK.

1. SPECIFIC PERFORMANCE—*Delay in Payment of Purchase Money—Waiver by Vendor.* A waiver of the payment, at the day, of an installment of the purchase money, may be inferred from the vendor's silence where silence is inconsistent with any other explanation.

2. APPEAL AND ERROR—*Application for Supersedeas—Affirmation.* The record being clearly devoid of error, and the situation rendering a prompt disposition of the controversy necessary, the judgment was affirmed.

*Error to Weld District Court, Hon. Robert G. Strong, Judge.*

*Department One.*

Mr. JOHN C. NIXON, for plaintiffs in error.

Mr. FANCHER SARCHET, for defendant in error.

Burke, J.

OCTOBER 9, 1917, Ralph C. Heagy, one of the plaintiffs in error, entered into a written contract with Mary Steinmark, defendant in error, selling to her the West one-half of the Northwest one-quarter of Section 1, Township 10 North, Range 60 West of the 6th P. M., in Weld County, Colorado, for the consideration of $1,000. One dollar was paid in cash, $499 was to be paid on or before November 10, 1917, and $500 on or before November 10, 1918, with interest at 8%, on deferred payments, from October 10, 1917. This contract contained the following clause: "Mutually agreed that the terms will be an essential part of this agreement. In case of failure of the second party to perform any and all of the .covenants on her part, this contract shall be forfeited and determined at the election of the first party, and second party agrees to surrender and deliver up the above described premises to the first party". June 24, 1918, Mary Steinmark brought suit in the District Court of Weld County for specific performance

and damages.    October 19, 1918, the cause was tried to the court without a jury, and thereafter findings were made by the court and judgment entered in favor of defendant in error, decreeing specific performance of the contract in question, and awarding her damages in the total sum of $950; $600 of this sum being for damages to her chattel property on the premises in question, and the removal of a fence therefrom, and $350 for the use of the premises during the time she had been deprived thereof.

It is undisputed that on November 9, 1917, Heagy granted one week additional time in which to make the payment of $499 called for by the contract, and during that week, on the assumption by him that payment would not be made, he negotiated with Kragh for a sale of the premises to him. November 16th, Kragh came to the premises in question, where Heagy had continued to reside, and they made some further arrangements, or had some further negotiations about the proposed sale to Kragh.    Before they left the place, Mrs. Steinmark, who was there present, explained to Heagy, in the presence of Kragh, that she had procured the funds necessary to make the payment of $499; that she had the money ready in the bank at Grover and would meet Heagy there on the following day and make the payment. No objection was made to this arrangement and no information was given concerning the proposed deal between Heagy and Kragh, who immediately drove to Greeley, some fifty miles distant, where Heagy deeded the premises to Kragh, who paid therefor the sum of $1,000.    November 17, Mrs. Steinmark went to the Grover bank, where she waited all day long for Heagy, who did not put in an appearance. November 22, Mrs. Steinmark went again to the Heagy residence on the premises in question, where Kragh was present, and made tender to Heagy of the $499 in gold, with interest, and was told by Kragh that he had bought the place.

Between October 9 and November 16 Mrs. Steinmark transferred to the premises in question, from an adjoining 120-acre tract owned by her, certain produce which she

put in a wire corral thereon, and in the cellar. A large portion of this produce was destroyed by cattle belonging to Kragh, which he turned into the premises with the consent and assistance of Heagy.

Mrs. Steinmark never ceased to claim her rights under the contract, and with full knowledge of all these matters Kragh cropped the land the following spring and removed part of the line fence between it and the 120-acre tract belonging to Mrs. Steinmark.

This cause is now before us on the application of plaintiffs in error for a supersedeas.

---

Mr. Justice Burke delivered the opinion of the Court:

So far as the facts are in dispute, the trial court found generally for the defendant in error. He found that had Mrs. Steinmark known that a forfeiture would be claimed for failure to make payment on November 16th she would have paid on that date; that Kragh was fully cognizant of the facts of the transaction between Heagy and Steinmark and charged with all of the responsibility of Heagy in connection therewith; that Kragh entered into possession of the premises with the knowledge and consent of Heagy; that he deliberately turned his stock into the premises in question and suffered them to largely, if not wholly, destroy Mrs. Steinmark's produce; that Heagy was a party to this wrong; that the removal of the line fence was wrongful and that the damages were as hereinbefore set out. There is ample evidence to support these findings and we see no reason to disturb them. The only question raised, which is worthy of serious consideration, is the effect of Heagy's silence when told by Mrs. Steinmark that she would make payment at Grover November 17th, presumably one day after the expiration of her extension. Heagy was advised that the money was then ready in the bank at Grover. The contract in question fixes Grover as the place of residence of both Heagy and Steinmark, but

contains no specific provision as to where the money is to be paid. It is very evident from the evidence, and from the findings of the court, that Heagy could have had payment made to him on the 16th, at Grover, had he not intentionally misled Mrs. Steinmark into believing that payment would be accepted on the 17th.

The trial judge seems to have found that Mrs. Steinmark was so misled by the *silence* of Heagy, and we accept that construction, although she testifies that Heagy's answer was "all right."

"Mere silence on the part of a defendant does not amount to a waiver of the performance of a condition, unless indeed in cases where such silence is inconsistent with any other explanation." *The Burlington & Missouri Railroad Co. v. Boelster,* 15 Iowa 555-559.

Mrs. Steinmark, in the presence of both Heagy and Kragh, asserted that she was ready and able, within the period of the extension granted, to make payment at Grover, where payment should be made, but suggested that she do so on the following day. If Heagy was silent under such circumstances, that silence "is inconsistent with any other explanation" than waiver, unless it be the explanation that that silence was for the very purpose of inducing defendant in error to forfeit her rights under the contract, an interpretation imputing to Heagy a wrong of which he can not avail himself.

"Where the reasonable inference from the whole situation between the parties in contractual relations, is that one of them with knowledge, actual or constructive, has waived or abandoned a claim of right and the other relying thereon has acted accordingly, generally speaking, an effectual intent to waive is implied 'regardless of whether there was an actual or an express intent to waive, or even if there was an actual but undisclosed intent to the contrary even,' whether there is any element of estoppel, strictly so called or not." *McNaughton v. Des Moines Life Ins. Co.,* 140 Wis. 214; 122 N. W. 764.

The "reasonable inference" in the instant case certainly is that Heagy, with full knowledge that payment could and would be made on November 16th, waived his right thereto, and that Mrs. Steinmark, "relying thereon", "acted accordingly"; and Heagy is bound thereby, "even if there was an actual but undisclosed intent to the contrary."

The farming season of 1919 is at hand and the ownership and right of possession of the premises in question ought, if possible, to be promptly determined. This record is so clearly devoid of error that we deem a further hearing unnecessary.

Supersedeas is denied and the judgment affirmed.

Garrigues, C. J., and Teller, J., concur.